## Nan Ya Plastics Corporation U.S.A.

### v.

## Philip R. DeSantis

Record No. 860635

March 3, 1989

Present: All the Justices

*J. Lloyd Snook, III* for appellant.
*John A. Dezio* for appellee.

COMPTON, J., delivered the opinion of the Court.

This appeal stems from an action for damages brought by an employee against an employer for the alleged breach of an employment contract. First, we must decide whether the trial court properly exercised *in personam* jurisdiction over a foreign corporation under Virginia's long-arm statute. If we decide the jurisdictional question in favor of the plaintiff, we will examine issues of contract breach and damages.

In 1985, appellee Philip DeSantis, a resident of Greene County, filed a motion for judgment against appellant Nan Ya Plastics Corporation U.S.A. seeking recovery of $350,000 for breach of a 1984 employment contract. Nan Ya was a multi-national Dela-

ware corporation doing business in Texas. Upon affidavit that Nan Ya had failed to appoint or maintain a registered agent in the Commonwealth, process was served upon the clerk of the State Corporation Commission as defendant's statutory agent for service of process, pursuant to Code § 13.1-758(F).

Subsequently, defendant filed a motion to quash the service of process. After a hearing, the trial court denied the motion. Later, following a bench trial on the merits, the court found in favor of the plaintiff and fixed damages accordingly. Judge E. Gerald Tremblay ruled on the motion to quash and Judge Henry D. Garnett presided over the trial on the merits. We awarded defendant this appeal from the April 1986 judgment order.

The facts relevant to the jurisdictional issue mainly are undisputed. Where there was conflicting evidence, we will view the facts in the light most favorable to the plaintiff, according to settled principles.

The plaintiff had been employed since 1980 as production manager for Kloeckner-Pentaplast of America, Inc. (KPA), at its Gordonsville plant. The company dealt in the plastics industry, specifically with rigid polyvinyl chloride film. The plaintiff was experienced in that industry.

In February 1984, Jules Pilcher, employed by Rocheux International, the seller of defendant's products, contacted plaintiff in Virginia from outside the State by telephone. Pilcher, a former co-worker with plaintiff at another company, asked plaintiff if he "would be interested in a plant manager's job for Nan Ya Plastics in the Wharton, Texas plant." Pilcher said he was calling on behalf of Nan Ya.

Pilcher telephoned plaintiff on several subsequent occasions on behalf of Nan Ya to arrange an appointment for a job interview in Wharton. Pilcher also arranged for the plaintiff to fly to Texas and provided the airline ticket which plaintiff obtained at the airport.

The plaintiff arrived in Houston, Texas on February 26, 1984 where he was met by Pilcher and Noah Wong, another representative of Rocheux. The three travelled by automobile from the Houston airport for the interview in Wharton, a trip of about one hour and forty-five minutes.

At Wharton, the plaintiff met Y.L. Chang, the general manager of Nan Ya's Wharton plant. Present during the interview were Pilcher, Wong and Chang. Wong acted as interpreter for Chang.

At the conclusion of the interview, "they" offered plaintiff "the position of plant manager" at a "price of $60,000." The plaintiff declined the offer and asked about "some guarantees, housing, moving expenses." Specifically, the plaintiff asked for a five-year employment guarantee. Chang was unable to agree to the demand for the guarantee without consulting Nan Ya's chairman in Taiwan.

The plaintiff returned to Texas the following weekend to tour the Wharton plant. Chang informed him that he had not "received verification" from Taiwan concerning the five-year guarantee.

Following plaintiff's return to Virginia, he received a letter from Chang dated March 9, 1984 mailed from Texas. In the letter, Chang offered plaintiff the "position as a Plant Manager in charge of production management of the Wharton Plant" at an annual salary of $60,000 plus other benefits. The plaintiff notified Nan Ya, by telephone through Pilcher and Wong, that the offer of the five-year guarantee was not contained in the letter and that he would not resign his position with KPA "until [he] received that."

Subsequently, the plaintiff received in Virginia a letter from Chang dated March 13, 1984 mailed from Texas. Referring to the earlier letter, Chang wrote that "our company will offer you . . . the position of Wharton plant manager . . . for a consecutive five (5) years." The letter also referred to other benefits offered by Nan Ya, including payment of moving expenses from Virginia to Texas. Upon receipt of the letter, the plaintiff telephoned either Chang or Pilcher, accepted the offer, and indicated that he would resign his position at KPA. The plaintiff immediately resigned from KPA, a competitor of Nan Ya, and was sent to Nan Ya's headquarters in Taiwan for a period of training.

In the order denying the motion to quash service of process, the trial court recited the foregoing basic facts and found that the March 4 letter constituted an offer of employment. The court further found that the plaintiff's response to that letter by telephone insisting "upon additional conditions" had the legal effect of a counter offer. The court also found that the March 13 letter constituted acceptance of the counter offer; that upon receipt of that letter in Virginia, "the contract between the parties was consummated in Virginia; and that this consummation of the contract was then verified by a telephone call from the Plaintiff in Virginia to the Defendant." Thus, the court ruled, "the Defendant had suf-

ficient contact with Virginia and had acceded to the laws of Virginia," thereby giving the court *in personam* jurisdiction over defendant.

On appeal, defendant argues the trial court erroneously exercised jurisdiction over it. Defendant points to the uncontradicted evidence that Nan Ya did no business in Virginia, maintained no registered agent in Virginia, had no employees in Virginia, owned no property in Virginia, and had no regular business contacts with anyone in Virginia. Defendant says the "only" contacts upon which plaintiff based his allegation of Virginia jurisdiction were the telephone calls from Pilcher to him and the letters of March 9 and 13. Furthermore, defendant contends the trial court erred when it ruled that the employment contract was formed in Virginia. Relying on the so-called "mailbox rule," defendant says that the contract was complete in Texas when the letter of March 13 was posted. We disagree with the defendant's contentions.

■ According to the long-arm statute, a Virginia court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Code § 8.01-328.1(A)(1). A "person," as used in the foregoing statute, includes a corporation "whether or not a citizen or domiciliary of this State and whether or not organized under the laws of this State." Code § 8.01-328.

■ The function of our long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause of the Constitution of the United States. *Danville Plywood Corp.* v. *Plain and Fancy Kitchens, Inc.*, 218 Va. 533, 534, 238 S.E.2d 800, 802 (1977). The Due Process Clause, however, protects a person's liberty interest in not being subject to the binding judgments of a forum unless he has "certain minimum contacts" within the territory of the forum so that maintenance of the action does not offend "traditional notions of fair play and substantial justice." *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945). *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 471-72 (1985).

■ And, an examination of the history of litigation involving the limits placed by the Due Process Clause on the power of state courts to enter binding judgments against persons not served within their boundaries shows a "clearly discernible" trend "to-

ward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 222 (1957).

> "In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Id.* at 222-23.

■ Because our statute speaks of transacting *any* business, it is a single-act statute requiring only one transaction in Virginia to confer jurisdiction on our courts. *Kolbe, Inc.* v. *Chromodern, Inc.*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971). In *Kolbe*, the single business transaction occurring in Virginia consisted of procuring a purchase order from a Virginia corporation by the agent of a California manufacturer for the sale and delivery of furniture to a North Carolina purchaser. In *I.T. Sales, Inc.* v. *Dry*, 222 Va. 6, 278 S.E.2d 789 (1981), the single transaction in Virginia involved the signing of an employment contract in Virginia, a contract which required the defendant to move to California. In both cases, we held that the defendant conducted a business transaction in this State that was sufficiently substantial to permit personal jurisdiction to be asserted under the long-arm statute. The present case is similar to *Kolbe* and *I.T. Sales.*

■ Nan Ya aggressively reached into Virginia and recruited a Virginia resident for employment elsewhere. The plaintiff was located in Virginia when he participated in the telephonic negotiations, and written communications were sent to and received in Virginia. These letters were acknowledged by the plaintiff in Virginia.

■ More importantly, however, the employment contract was formed in Virginia. The plaintiff, after receipt of the first March letter, expressly conditioned his acceptance of the job offer upon his receipt of assurances that a five-year guarantee would be a part of his contract. He testified that he would not resign from his

job at KPA until he "received that," meaning the promise of the guarantee. The assurance of the guarantee was transmitted in the second March letter received in Virginia. Under these circumstances, defendant's "mailbox rule" argument is not pertinent because the plaintiff required the letter of acceptance actually to be received as a condition to formation of the contract. Thus, the contract was not formed until the letter was received. *See* 1 *Williston on Contracts* § 88, at 283 (3d ed. 1957). And the trial court properly so found when it stated that the contract between the parties "was consummated in Virginia" upon receipt of the March 13 letter.

■ Accordingly, we hold that the assertion of *in personam* jurisdiction by the trial court over the nonresident defendant for a cause of action arising from the consummation of the contract in Virginia between the plaintiff and the nonresident corporation was proper under the foregoing provision of the Virginia long-arm statute.

Turning to the merits of the breach of contract claim, we conclude that the trial court's findings of fact control this phase of the case. Defendant's contention centers around the idea that, because plaintiff knowingly breached an agreement with KPA to assume employment with Nan Ya, the risk of plaintiff's continued employment with Nan Ya should be "apportioned," and that it "is unfair and inequitable" to require defendant to "suffer" for an alleged breach of its contract of employment. Defendant states: "Whether characterized as *in pari delicto*, assumption of risk, or unclean hands, DeSantis should not be permitted to require Nan Ya to pay for his mendacity to KPA." In effect, resolution of the issue turns on the knowledge and conduct of Nan Ya with reference to an agreement between DeSantis and KPA. As we shall demonstrate, the facts, stated in the light most favorable to the plaintiff, do not support defendant's contentions.

While plaintiff was employed by KPA, he was required to execute a Confidential Technical and Business Information Protection Agreement (hereinafter, the secrecy agreement). Generally, the secrecy agreement prohibited disclosure by the employee of certain confidential information. It also contained a prohibition against an employee rendering services for any competing organization for a period of two years after his termination of employment with KPA.

When the plaintiff arrived in Houston during his first trip to Texas, he initiated a discussion with Pilcher and Wong, Nan Ya's authorized representatives, about the secrecy agreement. The plaintiff was apprehensive about the effect the agreement would have upon his employment with a competitor of KPA such as Nan Ya. The plaintiff had a copy of the agreement in his possession and Pilcher and Wong, during the long ride to Wharton, "said that they would look at it later." After the first interview with Chang, plaintiff gave Pilcher a copy of the secrecy agreement. According to the plaintiff, Pilcher carried the document to another room where Wong was present. Later, they told plaintiff that a Virginia agreement would not "stand up" in Texas and that "we really wouldn't have any problems with it." Later that evening, during dinner, the secrecy agreement was discussed between Chang and Wong, in plaintiff's presence.

The plaintiff joined Nan Ya and left for Taiwan on March 28, 1984. Shortly, KPA threatened legal action against both parties based on the secrecy agreement. In May 1984, a federal district court in Virginia entered a temporary restraining order at KPA's request enjoining DeSantis from "continuing in his employment with Nan Ya," from disseminating any confidential information, and from otherwise violating the secrecy agreement.

In June 1984, the federal judge enlarged the restraining order into a preliminary injunction, but permitted DeSantis to draw his salary from Nan Ya. Nan Ya continued to pay the plaintiff directly until June 30, 1984. According to the evidence, plaintiff was not discharged by Nan Ya in June but continued to live in Texas and drew a salary indirectly from Nan Ya by payments made by Pilcher, Wong, and Rocheux; they ultimately were reimbursed by Nan Ya.

In December 1984, the federal judge entered an order vacating that portion of the preliminary injunction which enjoined DeSantis from continuing employment with Nan Ya. Thereafter, on December 11, 1984, plaintiff discovered that Nan Ya had terminated him. That action spawned the present lawsuit.

The trial court found that Pilcher and Wong were acting for Nan Ya, that Nan Ya had full knowledge of the secrecy agreement before plaintiff was hired, and that Nan Ya breached the contract of employment.

Defendant contends that it should not be liable to the plaintiff for breach of contract because plaintiff knowingly assumed the

risk that KPA would obtain an injunction, thereby making his employment with Nan Ya "impossible." As we have said, the factual findings of the trial court, amply supported by the evidence, make such an argument untenable.

■ "The burden of proof to establish excusable impossibility of performance of a contract is on him who asserts it." *Paddock* v. *Mason*, 187 Va. 809, 817, 48 S.E.2d 199, 203 (1948). As the trial court found, Nan Ya was aware of the details of the secrecy agreement from the very first time DeSantis was interviewed in Texas. Armed with this knowledge, Nan Ya employed DeSantis, guaranteeing him employment for five years. Even after a temporary restraining order was entered barring plaintiff's employment with Nan Ya, it continued to pay him, directly or indirectly, until December. Given this knowledge and conduct, we cannot say that the trial court erred in finding that defendant had failed to carry its burden to establish excusable impossibility; indeed, the facts show that Nan Ya is the party which bore the risk that an injunction might make it impossible for plaintiff to work for it.

■ Finally, defendant raises a question of damages. The trial court, enforcing the employment contract, awarded plaintiff judgment in the amount of $73,766.22, for salary up to the date of the March 1986 trial, and further ordered Nan Ya to pay the plaintiff $5,000 per month beginning in April 1986 through March 1989. Nan Ya was ordered to place the sum of $180,000 with a fiduciary to guarantee the payments to DeSantis. Execution on the judgment order has been suspended pending appeal.

Defendant contends that, although the trial court allowed defendant credit for wages actually earned by DeSantis, the court erred in refusing to offset against salary due any amounts DeSantis was likely to earn in the future during the remaining term of the contract. We reject this contention. As the trial court found, the evidence to support this claim was based on "conjecture" and was purely speculative.

For these reasons, the judgment appealed from will be

*Affirmed.*