Present:   All the Justices

PENINSULA CRUISE, INC.

                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 980728              February 26, 1999

NEW RIVER YACHT SALES, INC.

        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Randolph T. West, Judge

     In this appeal we consider whether the circuit court

erred in refusing to exercise personal jurisdiction over a

Florida corporation pursuant to Code § 8.01-328.1, the long-

arm statute.

     Peninsula Cruise, Inc., filed its amended motion for

judgment against New River Yacht Sales, Inc.  The plaintiff

sought to recover, among other things, the cost of repairs

made to a sport fishing boat it had purchased from New River

Yacht Sales.  The defendant filed responsive pleadings,

including a special plea which asserted that the court lacked

personal jurisdiction over it.  The defendant contended that

it does not transact and has not transacted business in

Virginia, nor has it engaged in any other activity that would

satisfy the requirements of Code § 8.01-328.1.  The litigants

agreed to certain stipulated facts, and the circuit court held

that it lacked a "sufficient basis upon which to exercise

personal jurisdiction over the defendant in accordance with"

Code § 8.01-328.1. The circuit court dismissed the action, and the plaintiff appeals.

The following stipulated facts are relevant to our disposition of this appeal. Edward H. Shield, president of Peninsula Cruise, contacted the defendant's employees regarding the purchase of a sport fishing boat. Shortly thereafter, Shield went to the defendant's premises in Fort Lauderdale, Florida to inspect the boat. Shield made arrangements to have a marine surveyor inspect the boat in Fort Lauderdale. The parties agreed that certain improvements and repairs to the boat were necessary. Shield gave the defendant a check as a deposit for the boat and returned to Virginia.

After Shield returned to Virginia, he contacted the defendant's employees to discuss the status of the repairs and improvements to the boat and to make delivery arrangements. The defendant's employees, who were in Florida, prepared an itemization of the repairs to be performed on the boat, fixed the purchase price of the boat at $275,000, and identified the delivery point for the boat as Charleston, South Carolina.

The defendant's employees left Fort Lauderdale with the boat en route to South Carolina. However, the boat developed an oil leak and sustained damage to the propeller. "For

2

additional consideration, [the] [d]efendant agreed to deliver the vessel all the way to Virginia."

The defendant's employees delivered the boat to the plaintiff in Virginia. "Thereafter, the parties spoke by telephone while [p]laintiff was in Virginia and [d]efendant was in Florida, and [d]efendant advised [p]laintiff that it should have the necessary repair work done and forward copies of repair invoices to the [d]efendant for consideration for reimbursement. The repair work was done in Virginia."

Code § 8.01-328.1(A) states in part that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . 1. [t]ransacting any business in this Commonwealth . . . ." The plaintiff contends that the circuit court erred in failing to exercise personal jurisdiction over the defendant because the defendant transacted business in Virginia pursuant to Code § 8.01-328.1(A)(1), and that the defendant had sufficient contacts with Virginia to satisfy the requirements of due process. The defendant, however, asserts that its delivery of the boat to Virginia does not constitute "transacting business" within the meaning of the long-arm statute, and that it did not have sufficient contacts with Virginia to satisfy the requirements of due process.

3

We have stated that "[i]t is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." John G. Kolbe, Inc. v. Chromodern Chair Co., Inc., 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971); accord Krantz v. Air Line Pilots Assoc., 245 Va. 202, 205, 427 S.E.2d 326, 328 (1993); Nan Ya Plastics Corp. v. DeSantis, 237 Va. 255, 259, 377 S.E.2d 388, 391, cert. denied, 492 U.S. 921 (1989); Carmichael v. Snyder, 209 Va. 451, 456, 164 S.E.2d 703, 707 (1968).  We have held that Code § 8.01-328.1 "is a single-act statute requiring only one transaction in Virginia to confer jurisdiction on our courts."  Nan Ya Plastics Corp., 237 Va. at 260, 377 S.E.2d at 391; I.T. Sales, Inc. v. Dry, 222 Va. 6, 9, 278 S.E.2d 789, 790 (1981); John G. Kolbe, Inc., 211 Va. at 740, 180 S.E.2d at 667.

The Due Process Clause of the Fourteenth Amendment to the federal constitution protects a person's liberty interest in not being subject to the binding judgment of a forum unless that person has certain minimum contacts within the territory of the forum so that maintenance of an action against that person does not offend "traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  See Burger King Corp. v. Rudzewicz,

4

471 U.S. 462, 471-72 (1985). The circumstances of each case must be examined to ascertain whether the requisite minimum contacts are present. Kulko v. California Superior Court, 436 U.S. 84, 92 (1978); Witt v. Reynolds Metals Co., 240 Va. 452, 454, 397 S.E.2d 873, 875 (1990).

In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980), the United States Supreme Court discussed the limitations that the Due Process Clause imposes upon the power of a state court to render a valid personal judgment against a non-resident defendant:

> "As has long been settled . . . a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State. . . . The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.
> The protection against inconvenient litigation is typically described in terms of 'reasonableness' or 'fairness.' We have said that the defendant's contacts with the forum State must be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.' . . . The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.' . . . Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors,

> including the forum State's interest in adjudicating the dispute . . . ."

The Supreme Court observed that "[t]he limits imposed on state jurisdiction by the Due Process Clause, in its role as guarantor against inconvenient litigation, have been substantially relaxed over the years. . . . [T]his trend is largely attributable to a fundamental transformation in the American economy." Id. at 292-93. Explaining the reason for this expansion in the permissible scope of state jurisdiction over foreign corporations and other non-residents, the Supreme Court stated:

> "Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." McGee v. International Life Ins. Co., 355 U.S. 220, 222-23 (1957).

Accord World-Wide Volkswagen Corp., 444 U.S. at 293; Hanson v. Denckla, 357 U.S. 235, 250-51 (1958).

We hold that Code § 8.01-328.1(A) authorized the circuit court to exercise personal jurisdiction over the defendant. The defendant transacted business in this Commonwealth within the meaning of the long-arm statute. Even though the defendant had initially agreed to deliver the boat to South

6

Carolina, the defendant was paid additional consideration to deliver the vessel to Virginia. The defendant's employees physically transported the boat within Virginia's boundaries and delivered the boat to the plaintiff in Virginia. The defendant's employees had telephone conversations with the plaintiff, discussed the status of repairs and improvements to the boat, and, after the defendant's employees had physically transported the boat to Virginia, the "[d]efendant advised [p]laintiff that it should have the necessary repair work done and forward copies of repair invoices to the [d]efendant for consideration for reimbursement." The repair work was performed in Virginia.

We conclude that the defendant, by taking these actions, purposefully availed itself of the privilege of conducting activities within this Commonwealth, thereby invoking the benefits and protections of Virginia's laws. Maintenance of this action in Virginia "does not offend traditional notions of fair play and substantial justice" because the defendant, through its purposeful acts, had sufficient contacts with this Commonwealth. The defendant's contacts with this Commonwealth make it reasonable for the defendant to be required to defend the plaintiff's action in this State.

We reject the defendant's contention that our decision in Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc., 218

7

Va. 533, 238 S.E.2d 800 (1977), compels a different result. In Danville Plywood Corp., we held that the long-arm statute did not grant a circuit court personal jurisdiction over a non-resident defendant. Danville Plywood, a Virginia corporation which operated a manufacturing plant in Danville, sold plywood panels to Plain and Fancy Kitchens, Inc. (Kitchens), a foreign corporation. Kitchens operated a manufacturing facility in Pennsylvania. Danville Plywood's representative in Pennsylvania solicited a sales order from Kitchens. As a result of the solicitation, Kitchens placed an order with Danville Plywood for more than 500 plywood panels to be shipped, F.O.B. Danville, to Kitchens. Danville Plywood delivered the panels to a common carrier which transported them to Kitchens' facility in Pennsylvania. Kitchens refused to pay for the materials, alleging that some of the panels were defective. Danville Plywood filed an action in Virginia. Id. at 534, 238 S.E.2d at 801-02.

We held that the long-arm statute did not permit the circuit court to exercise personal jurisdiction over Kitchens because Danville Plywood failed to establish that Kitchens had sufficient contacts in Virginia to satisfy the requirements of due process. We also pointed out that "[w]hile the risk of loss of panels shipped F.O.B. Danville passed from Plywood to Kitchens when the panels were placed in the possession of the

common carrier at Danville . . . and while technical acceptance of the order may have occurred in Virginia by Plywood's delivery of the panels to the carrier, this evidence is insufficient to establish that Kitchens had the necessary 'minimum contacts' . . . ." Danville Plywood Corp., 218 Va. at 535, 238 S.E.2d at 802.

Here, unlike the facts in Danville Plywood Corp., the defendant, through its purposeful conduct, did have the necessary minimum contacts. As we have already stated, the defendant was paid additional consideration to perform in Virginia a portion of its contract with the plaintiff. The defendant performed its contractual obligations in part by delivering the vessel in this Commonwealth.

Accordingly, we will reverse the judgment of the circuit court and remand this case for further proceedings.

Reversed and remanded.