## CIRCUIT COURT OF LOUDOUN COUNTY

America Online, Inc.

v.

E*Trade Group, Inc.

April 3, 2002

Case No. (Law) 24251

BY JUDGE JAMES H. CHAMBLIN

This case is before the Court on E*Trade Group, Inc.'s (E*Trade) Motion to Quash Service and to Dismiss. E*Trade asserts that this Court does not have *in personam* jurisdiction over E*Trade and asks this Court to dismiss the case on jurisdictional grounds. Based on the reasons set forth below, the Court holds that it does have *in personam* jurisdiction over E*Trade. Accordingly, E*Trade's Motion to Quash Service and to Dismiss is overruled.

### *Facts*

The following facts are based on the allegations of the Motion for Judgment and the evidence presented at the hearing on the Motion held on January 25, 2002, and February 25, 2002.

On December 20, 2000, America Online, Inc. (AOL) filed a motion for judgment against E*Trade. E*Trade was served with the notice of motion for judgment and a copy of the motion for judgment on October 3, 2001. E*Trade made a special appearance and filed a Motion to Quash Service and

to Dismiss on November 13, 2001, asserting that this Court does not have *in personam* jurisdiction over E*Trade.

AOL asserts that the parties entered into a written contract on, or about, September 30, 2000. AOL alleges that E*Trade subsequently breached the contract.

In the spring of 2000, AOL and E*Trade began negotiating the terms of a written strategic alliance agreement. (Pl. Ex. 3.) During these negotiations, AOL and E*Trade entered into two advertising insertion orders. (Pl. Ex. 3, 4.) These insertion orders were advertising contracts between the parties. The first insertion order ran between July 1 and July 31, 2000. The second insertion order ran between August 1 and 15, 2000. The negotiations regarding the strategic alliance agreement took the form of e-mails, telephone calls, and facsimile transmissions between AOL in Virginia and E*Trade in California. Both AOL and E*Trade are Delaware corporations; however, AOL's principal place of business is in Loudoun County, Virginia, while E*Trade's principal place of business is in Menlo Park, California.

On June 20th, August 14th, and August 15th, 2000, AOL representatives went to California to negotiate with E*Trade regarding the strategic alliance agreement. E*Trade representatives never came to Virginia to negotiate the terms of the agreement. On September 29th, 2000, Kyle Johnson, senior counsel to AOL, sent two e-mails to Dianne Turriff, assistant general counsel to E*Trade. (Pl. Ex. 6, 7.) One of the e-mails contained a draft of the strategic alliance agreement. (Pl. Ex. 7.) On September 30th, 2000, Mr. Johnson e-mailed Matt Ariker, vice president of marketing for E*Trade, a signature page for the agreement and an added changed section that was to be placed in the agreement. (Pl. Ex. 8.) The signature page read as follows: "In witness whereof, the parties hereto have executed this Agreement as of the Effective Date." (Pl. Ex. 8.) The signature page included an area for an AOL representative to sign and an area for an E*Trade representative to sign. Later that same day, Michael Sievert, chief marketing officer for E*Trade, faxed a copy of the signature page to Eric Keller, senior vice president of AOL. The signature page contained Mr. Sievert's signature with the words "agreed with changes" written above his signature. Mr. Sievert's e-mail included a copy of the earlier e-mail from Mr. Johnson regarding one change to the agreement and a fax cover sheet. The fax cover sheet contained the following:

Eric — Attached is the signature page executing our agreement, including any changes made verbally today and agreed between the parties. I believe Matt or Diane will get with you Monday re the final

written version. We can execute hard copies at that time. Congratulations to us both — Mike.

(Pl. Ex. 9.)

On October 2, 2000, David Coleburn, president of AOL, signed a signature page identical to the one signed by Mr. Sievert, except that it did not contain Mr. Sievert's signature or handwriting. The work to be performed by AOL under the alleged strategic alliance agreement was to be done in Virginia.

## In Personam Jurisdiction

AOL claims that this Court has jurisdiction over E*Trade under the Virginia long-arm statute. Specifically, AOL claims that E*Trade "transacted business" in the Commonwealth of Virginia within the meaning of Va. Code Ann. § 8.01-328.1(A)(1) (Michie 2000 & Supp. 2001). Section 8.01-328.1(A)(1) provides that, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: 1. Transacting any business in this Commonwealth. . . ." A person includes a corporation. Va. Code Ann. § 8.01-328 (Michie 2000). "When jurisdiction over a person is based solely on this section, only a cause of action arising from acts enumerated in this section may be asserted against him. . . ." § 8.01-328.1(C).

The purpose of Virginia's long-arm statute is to assert jurisdiction over a nonresident who engages in purposeful activity within this Commonwealth to the extent permissible under the due process clause of the United States Constitution. *Kolbe, Inc. v. Chromodern*, 211 Va. 736, 740, 180 S.E.2d 664 (1971); *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*, 218 Va. 533, 534, 238 S.E.2d 800 (1977); *Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 259, 377 S.E.2d 388 (1989); *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319, 512 S.E.2d 560 (1999). It is a single act statute requiring only one transaction that amounts to "transacting business" in Virginia to confer jurisdiction on its courts. *Kolbe*, 211 Va. at 740; *Danville Plywood*, 218 Va. at 534-5; *Nan Ya*, 237 Va. at 260; Peninsula Cruise, 257 Va. at 319.

The Supreme Court of Virginia recently articulated that:

The Due Process Clause of the Fourteenth Amendment to the federal constitution protects a person's liberty in not being subjected to the binding judgment of a forum unless that person has certain minimum

contacts within the territory of the forum so that maintenance of an action against that person does not offend "traditional notions of fair play and substantial justice."

*Peninsula Cruise*, 257 Va. at 319, citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985); see e.g. *Kolbe*, 211 Va. at 738; *Danville Plywood*, 218 Va. at 535.

The Supreme Court of the United States has stated that the constitutional touchstone of jurisdiction is whether the defendant purposefully established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (citing *International Shoe Co. v. Washington*, 362 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). These minimum contacts must be such that the defendant's conduct and connection with the forum state allow him to reasonably anticipate being haled into the forum state's court. *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 566, 62 L. Ed. 2d 490 (1980)). It is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.*, quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228, 1239-40 (1958); see *Peninsula Cruise*, 257 Va. at 321.

"This "purposeful availment" requirement ensures that a defendant will not be haled into court into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person. Jurisdiction is proper, however, where the contact proximately results from actions by the defendant himself that create a "substantial connection" with the forum state.

*Burger King*, 471 U.S. at 475-76 (internal citations omitted).

Where a defendant deliberately creates continuing obligations between himself and residents of the forum, "he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* (internal citations omitted).

In this case, E*Trade's activities satisfy the constitutional minimum contacts test and the Court's assertion of jurisdiction does not offend the notions of fair play and substantial justice. Although E*Trade representatives

never physically entered Virginia, E*Trade nevertheless affirmatively reached out from California into Virginia in order to negotiate the alleged strategic alliance agreement with AOL. *See Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255 (1989). E*Trade either knew, or should have known, that the work required of AOL under the agreement would be done in Virginia and not in California. Further, the services to be rendered by AOL under the agreement would benefit E*Trade wherever AOL subscribers would be, not necessarily just in California.

E*Trade and AOL communicated numerous times by e-mail, telephone, and facsimile transmissions. Many of the transmissions were sent by the corporate legal counsel of the parties. On September 30, 2000, AOL faxed E*Trade a "signature page" of the alleged contract. On this same date, E*Trade faxed a signed copy of this signature page from California to AOL in Virginia. Above the signature the following words were written "accepted with changes." On October 2, 2000, a representative of AOL signed an identical copy of the signature page, except that it did not contain the signature of the E*Trade representative, nor the phrase "accepted with changes." Therefore, it would appear, for the purposes of this motion only, that AOL, as the last signatory to the contract, accepted the contract terms in Virginia. Hence, the contract appears to have been formed in Virginia. The formation of a contract in Virginia was an important factor in the Virginia Supreme Court's decision in *Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255 (1989).

These contacts were purposefully directed to a resident of Virginia and were not the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person. These contacts with Virginia were substantial. E*Trade purposefully availed itself of the privilege of conducting activities within Virginia, and invoked the benefits and protections of its laws. Therefore, it is not unreasonable to require E*Trade to submit to the burdens of litigation in this forum as well. If the situation had been reversed, and E*Trade was claiming that AOL breached the alleged strategic alliance agreement, E*Trade would have been protected by the laws of the Commonwealth and would have been able to invoke the benefits of this Court in a suit against AOL. E*Trade could have reasonably anticipated being haled into a Virginia court regarding this transaction and litigating this case in the Circuit Court of Loudoun County does not offend the traditional notions of fair play and substantial justice.

At first glance the facts in this case seem to be similar to those in *Danville Plywood* and *Century Steel Products, Inc. v. McGuire Refrigeration*, Inc., 29 Va. Cir. 353 (Loudoun County 1992) (Judge Horne), however, those

cases are distinguishable because, in this case, there are no plywood panels or steel products being fabricated in Virginia and shipped out of state. This case involves services, not products. The facts in this case are similar to *Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499 (4th Cir. 1985), and *English & Smith v. Metzger*, 901 F.2d 36 (4th Cir. 1990), both of which found in personam jurisdiction over out-of-state clients who retained the services of Virginia law firms.

It is noted that Judge Middleton of the Fairfax County Circuit Court in *Cable & Wireless Communications, Inc. v. AOX, Inc.*, 24 Va. Cir. 92 (1991), on similar facts (the only difference being the provision of long distance telephone services as opposed to advertising services) found no in personam jurisdiction. I respectfully disagree with this result. As stated in *Nan Ya*:

> [A]n examination of the history of litigation involving the limits placed by the Due Process Clause on the power of state courts to enter binding judgments against persons not served within their boundaries shows a "clearly discernable" trend "toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." *McGee v. International Life Ins. Co.*, 355 U.S. 220, 222, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957).
>
> "In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more states and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity." *Id.* at 222-23.

237 Va. at 259-60.

The foregoing is certainly more true today than it was in 1957 or 1989.

E*Trade also asserts that this Court does not have in personam jurisdiction over it because the parties never reached an agreement. E*Trade argues that the allegations of the Motion for Judgment, and the evidence presented at the hearing on the Motion, do not prove that there was a meeting of the minds as to the terms of the agreement. It bases its argument on a theory that this Court cannot acquire in personam jurisdiction in a contract case unless the plaintiff can prove the existence of the contract. I do not agree.

Va. Code Ann. § 8.01-328.1(A)(1) (Michie 2000 & Supp. 2001) allows this Court to exercise personal jurisdiction over a defendant as to a cause of action arising from the defendant's "transacting any business in this Commonwealth." It does not base personal jurisdiction on a party's entering into a contract or being bound by a contract. The Court is of the opinion that the statute clearly contemplates the acquisition of personal jurisdiction over a defendant who transacts business in the Commonwealth by negotiating a contract, even though the negotiations do not lead to the formation of a binding contract. Whether the parties entered into a binding contract is a matter to be determined at a trial on the merits.

For purposes of this Motion only, the Court finds that E*Trade transacted business in the Commonwealth as to the agreement purported to have been entered into between the parties on, or about, September 30, 2002. This ruling applies to jurisdiction only. AOL will still bear the burden at trial to prove that it is entitled to recover from E*Trade. All defenses, except lack of personal jurisdiction, are still available to E*Trade.

## Conclusion

Based on the foregoing, this Court holds that it has in personam jurisdiction over E*Trade. The Motion to Quash and to Dismiss is overruled. E*Trade shall file its responsive pleadings on or before April 24, 2002.