# CIRCUIT COURT OF FAIRFAX COUNTY

Flood Doctor, Inc.

v.

Bryan Winters *et al.*

January 14, 2016

Case No. CL-2015-6755

By Judge Robert J. Smith

This case comes before the Court on the Defendant's Motion To Dismiss for Lack of Personal Jurisdiction. For the reasons that follow, the Court denies the motion.

The analysis addresses the law of agency as well as Virginia Code § 8.01-328.1, commonly referred to as the "Long Arm Statute." It is well settled that the purpose of the Long Arm Statute is to extend personal jurisdiction over a nonresident defendant to the extent permissible with due process. *Brown v. American Broadcasting Co.*, 704 F.2d 1296 (4th Cir. 1983); *Peanut Corp. of Am. v. Hollywood Brands*, 696 F.2d 311 (4th Cir. 1982). A single transaction is sufficient. *Kolbe, Inc. v. Chromodern, Inc.*, 211 Va. 736, 180 S.E.2d 664 (1971).

Plaintiff Flood Doctor is a restoration company, providing full service restoration and specialty cleaning. The company provides such services as water damage restoration, structural drying, sewage clean up, dehumidification, and rebuilding services. It is a Virginia corporation, having its principal place of business in Vienna, Virginia.

Defendant Bryan Winters resides in Florida. Doris Acree, a ninety-five-year-old resident of Gainesville, Virginia, is Winters's aunt. Ms. Acree is also a defendant.

Ms. Acree owns property located at 14028 Breeders Cup Drive, Gainesville, Virginia. On January 22, 2014, Winters, as agent of Acree, entered into an agreement with Flood Doctor to have Flood Doctor perform

certain services at the Breeders Cup Drive address. Winters signed the contract as "authorized agent."

Flood Doctor performed numerous services at the Breeders Cup Drive address and billed the defendants a total of $24,553.81. The bill remains unpaid.

Neither party disputes that Winters resided in Florida during all relevant times. Flood Doctor sent the contract to him at his Florida address. He signed it and returned it to the plaintiff. Neither party disputes that Winters acted at all times as Acree's agent.

As the defendant correctly points out in his brief, Virginia follows the general rule that an agent for a disclosed principal is not personally liable for any alleged breach of contract of his principal. *Lambert v. Phillips & Son*, 109 Va. 632, 64 S.E. 945 (1909).

The defendant's reliance on *Lambert* is correct, as far as it goes. I read *Lambert* slightly differently and for a more specific proposition. The law as stated by the Supreme Court of Virginia is "It is a general rule, standing on strong foundations and pervading every system of jurisprudence, that where an agent is duly constituted and *names his principal* and contracts *in his name*, and does not exceed his authority, the principal is responsible and not the agent." *Lambert*, 109 Va. at 635, citing Chancellor Kent in his commentaries (emphasis added).

The Supreme Court relied on *Mechem on Agency*. "Where dealings are had with the agent of a *known principal*, the legal presumption is, as has been said, that the credit was given to the principal, rather than to the agent personally, and this presumption will prevail in the absence of evidence that the credit was given exclusively to the agent and the burden is upon the party alleging it." *Lambert*, 109 Va. at 636 (emphasis added).

Both sources of law cited with approval by the Supreme Court of Virginia specifically state that the principal must be known for the agent to avoid personal liability. I interpret this to mean that the agent must disclose the identity of his principal, not merely the fact that he is an agent. Winters clearly disclosed the fact that he was an agent. However, he failed to name or in any way identify his principal.

Therefore, I conclude that Winters cannot rely on the principle of law that an agent cannot be held personally liable when he is acting for a known principal. I neither doubt that Winters signed the contract as he did to protect himself, nor ascribe to him any ill motive for signing the contract as he did. In fact, this is what the law requires an agent to do. However, Winters did not go far enough in his effort to avoid personal liability. Had Winters signed the contract "as authorized agent for Doris Acree," then he could not be held personally liable for any alleged breach of this contract.

However, this conclusion does not end the analysis. Although I have concluded that Winters can be held personally liable, there remains the question of whether he has sufficient contact with Virginia so that holding

him personally liable does not offend notions of due process. *Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 377 S.E.2d 388 (1989).

*Nan Ya* involved an employment contract. Nan Ya, a multi-national Delaware corporation, doing business in Texas, contacted DeSantis, a resident of Greene County, Virginia, telephonically and from outside the Commonwealth. The person who contacted DeSantis, Jules Pilcher, worked for a company that sold products Nan Ya manufactured. Pilcher knew that DeSantis had familiarity with the plastics industry. Pilcher asked DeSantis if he would be interested in a plant manager's job for Nan Ya at the Wharton, Texas, plant. Pilcher disclosed that he was calling on behalf of Nan Ya.

Pilcher called DeSantis several more times, on behalf of Nan Ya to arrange an appointment for a job interview in Texas. Pilcher provided the airline ticket for DeSantis to fly to Texas. After a series of negotiations including another trip to Texas, Nan Ya sent a letter to DeSantis offering employment. DeSantis notified Nan Ya, by telephone that the offer did not contain a five-year guarantee.

Nan Ya sent a letter to DeSantis that included all the benefits DeSantis desired. DeSantis resigned his position with the Virginia company for which he worked. Nan Ya sent DeSantis to Taiwan for a period of training. For reasons not pertinent to this opinion, the relationship between Nan Ya and DeSantis deteriorated. Ultimately, DeSantis brought a breach of contract action against Nan Ya in Virginia.

Nan Ya moved to quash service of process. Nan Ya argued that it did no business in Virginia, did not maintain a registered agent in Virginia, had no employees in Virginia, owned no property in Virginia, and had no regular contacts with anyone in Virginia. The trial court denied the motion, ruling that the parties formed the contract in Virginia.

The fact that Winters signed the contract in Florida does not mean that the contract was formed in Florida. Let us say that Winters signed the contract in Florida, but never returned it. Would there have been a contract? Flood Doctor obviously would not have commenced work had the contract not been returned to it in Virginia. Indeed, Flood Doctor would not even have had authority to enter onto the premises to commence work, let alone actually do the work, until Winters mailed the signed contract to Flood Doctor in Virginia. Until Flood Doctor received the contract in Virginia, neither party was bound to do anything pursuant to the contract. Therefore, I conclude that the contract was formed in Virginia.

In *Peninsula Cruise v. New River Yacht Sales, Inc.*, 257 Va. 315, 512 S.E.2d 560 (1999), the Virginia Supreme Court reviewed the Long Arm Statute as it applies to a nonresident defendant who does not normally conduct business in Virginia. The Court found that the trial court erred when it dismissed the action for lack of personal jurisdiction over the defendant.

The plaintiff, located in Virginia, contracted with the defendant, located in Florida, to purchase a boat, to be delivered in Charleston, South Carolina. Mechanical problems developed during the transport of the boat to Charleston. The defendant agreed to deliver the boat to Virginia for additional compensation and did so. The plaintiff sued to recover the costs of additional repairs to the boat that were performed in Virginia.

In reversing the trial court, the Supreme Court said:

> We conclude that the defendant, by taking these actions, purposefully availed itself of the privilege of conducting activities within this Commonwealth, thereby invoking the benefits and protections of Virginia's laws.

*Peninsula Cruise* at 321.

In this case, let us assume that Flood Doctor had performed the services incorrectly. There is absolutely no doubt that Winters could have brought an action against Flood Doctor in Virginia. In other words, Winters invoked the benefits and protections of Virginia's laws. Winters cannot have the benefit of the protection of our laws, yet claim not to be subject to the jurisdiction of our courts because he has insufficient contact with Virginia.

In this case, Winters availed himself of services of a Virginia company to perform work on property in Virginia. At oral argument on this motion, counsel for Winters argued that holding Winters liable would upset the normal stream of commerce. I believe that not holding him liable would upset the normal stream of commerce. Under the defense theory, persons and entities outside the Commonwealth could enter into contracts with persons and entities inside the Commonwealth for goods, products, services, and the like, and then, with impunity, refuse to pay for those goods, products, services, and the like, thereby forcing the persons and entities within the Commonwealth to seek recompense in the courts of the jurisdictions wherein those persons and entities reside. Such a result would be absurd.

In fact, the Supreme Court of the United States recognized, nearly sixty years ago, the modernization of the national commerce thanks to the improved technology of the postal system and the commensurate broadening of state jurisdiction over foreign corporations and other nonresidents. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 222-23, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957). Surely, now, our commercial landscape is even broader, thanks to the advent of, *inter alia*, the internet, overnight delivery, and an even greater ease of transportation noted by the Supreme Court. While technology cannot abridge the precedent for the permissible scope of personal jurisdiction, the ability of out-of-state residents like Winters to "reach into" the Commonwealth to conduct transactions is even broader than the *McGee* court could have imagined or predicted.

For the foregoing reasons, the Motion To Dismiss is denied.