## CIRCUIT COURT OF THE CITY OF RICHMOND

Frank Management, Inc.

v.

William Martin Joel

April 11, 1990

Case No. LR-3015

By JUDGE T. J. MARKOW

This case came before the court on March 28, 1990, on defendant's motion to dismiss or stay. The motion to dismiss challenges this court's authority to exercise personal jurisdiction over the defendant pursuant to Virginia's long-arm statute. Alternatively, defendant moves to stay proceedings here pending the outcome of a case being litigated in New York involving the same or similar issues. Because the court finds no basis for the exercise of jurisdiction, it need not consider the defendant's alternative request for a stay.

At the hearing of this matter on March 28, the court heard testimony from several witnesses for the plaintiff and admitted into evidence a joint stipulation of the parties incorporating all of the documents referenced therein. The facts relevant to the jurisdictional issue are as follows.

Frank Management, Inc., (FMI) has filed a two count amended motion for judgment against William Martin Joel (Joel) a musical entertainer and composer popularly known as Billy Joel. In Count I FMI alleges that Joel breached his management agreement with FMI when he terminated that agreement on August 30, 1989. In Count II, FMI alleges that Joel conspired to injure it in its trade or business

by disseminating adverse information about FMI. FMI served process on Joel in New York through the Secretary of the Commonwealth pursuant to § 8.01-329.

The management agreement between FMI and Joel was prepared and entered into in New York, originally in 1980, and has been extended at various times since then. Without further extension, it would have expired on December 31, 1989. The agreement, by its terms, is to be interpreted under New York law. All notices required to be sent and payments required to be made were to be sent to the parties or their representatives in New York. Joel terminated the agreement in New York.

FMI is a New York corporation with its principal place of business in New York. It has no office or registered agent in Virginia. Joel is a New York resident; he is not a Virginia resident. Joel owns no property and has no office or registered agent in Virginia.

Joel is a limited partner in three Virginia limited partnerships that have invested money or purchased property in Virginia. Joel is a shareholder in Jefferson Equities Corporation, a Virginia corporation that manages the Jefferson Sheraton Hotel in Richmond, Virginia. Joel did not sign any of the partnership agreements himself or personally enter Virginia to engage in any of the foregoing business enterprises. In each case, Frank Weber of FMI acted as his attorney-in-fact under a general power of attorney executed by Joel in New York. FMI receives no compensation under the management agreement for managing Joel's investments.

Services under the management contract were performed by FMI throughout the world, including Virginia. Joel's music is performed in Virginia, from which Joel receives performance royalties outside of Virginia pursuant to agreements with Broadcast Music, Inc., (BMI) and American Society of Composers, Authors and Publishers (ASCAP). Sound recordings of Joel's music are sold nationwide, including in Virginia, by CBS Records, Inc., (CBS). Joel receives royalties from CBS, pursuant to an agreement entered into in New York, for sales of recordings in Virginia. Joel has performed in Virginia four times since 1980. He has not performed in Virginia since August 30, 1989, when he terminated the FMI agreement. Joel performed at the Capital Center in Landover, Maryland, on March

3, 1990. Tickets to that concert were advertised and sold in Virginia.

Under the management agreement, FMI received an amount equal to 20% of Joel's income from the entertainment business, including performance royalties, record sale royalties, and live performance ticket sales. In this action, FMI claims damages based on its failure to receive income from these sources for the remainder of the contract term. There is no claim based on Joel's failure to pay the percentage arising from Joel's performances in Virginia, all of which predate the alleged contract breach.

The defendant's motion to dismiss calls upon this court to determine the scope of Virginia's long-arm statute.[1] The statute permits the Commonwealth "to exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: "1. Transacting any business in this Commonwealth . . ." or "4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth . . . ."

The statute also provides that "when jurisdiction . . . is based solely on this section, only a cause of action arising from acts enumerated in this section may be asserted . . ." Va. Code Ann. § 8.01-328.1 (Supp. 1989).

The second quoted paragraph, numbered 4, applies solely, if it applies here at all, to the plaintiff's claim that Joel conspired to injure FMI in its trade or business. Plaintiff has not argued the application of that section in its brief, nor has it offered any evidence that FMI has been tortiously injured in Virginia.[2] Therefore, the only issue here is the applicability of the first provision of the long-arm statute to these facts.

The determination of whether a Virginia court may exercise personal jurisdiction over a particular defendant

[1] The court finds no merit in plaintiff's contention that Joel made a general appearance, thus consenting to this court's jurisdiction, when he moved the court for an extension of time in which to answer, respond, or otherwise plead.

[2] The Virginia Supreme Court has not explicitly held that the plaintiff has the burden of proof on the jurisdictional issue. However, the federal courts in Virginia apply the rule stated in Haynes v. James H. Carr, Inc., 427 F.2d 700 (4th Cir. 1970), that the burden rests on the plaintiff. This court adopts that view.

is, at least technically, a two-step inquiry. The first step is to determine whether a provision of the statute applies. The second step is to determine whether the application of the statute in a particular case is consistent with due process under the principles of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Under the Virginia Supreme Court cases applying the statute, the two steps generally merge into one. The first case applying the statute focused on the *International Shoe* "minimum contacts" analysis. *See Kolbe v. Chromodern, Inc.*, 211 Va. 736, 180 S.E.2d 664 (1971). The most recent case decided the issue based on the language of the long-arm statute alone. *See Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 377 S.E.2d 388 (1989). Because the court has also held that the statute's function is to assert jurisdiction to the extent permissible under the Due Process Clause, *id.*, both lines of analysis are applicable to each step in the inquiry. Further, the cases on personal jurisdiction demonstrate that the decision in each case is highly fact specific. *See Kolbe*, 211 Va. at 740, 180 S.E.2d at 667.

In order to exercise jurisdiction over Joel, this court must find that (1) Joel transacted business in the Commonwealth and (2) the cause of action arises from that transaction of business. Joel's contacts with Virginia fall into two categories. One type includes record sales, performance royalties, and ticket sales. The second type is Joel's investment activity here.

Both categories of contacts involve agents acting on behalf of Joel, or by independent contractors rather than Joel himself. Recordings of Joel's music are sold by CBS, Inc. Rights to perform Joel's songs are sold by BMI and ASCAP. Tickets to concerts are sold by concert hall box offices and ticket outlets. As to investment activities, all business dealings were undertaken by the plaintiff as Joel's agent.

Joel argues in his reply brief that the plaintiff is attempting to "bootstrap" jurisdiction over Joel through the plaintiff's own acts and that this is impermissible. The court agrees. The United States Supreme Court has held that only the defendant's own acts may be a basis for jurisdiction. *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 80 L. Ed. 2d 404 (1984). However,

it is the opinion of this court that the acts of FMI as Joel's agent may be imputed to Joel under agency principles for purposes of suit by a third party. The long-arm statute refers to acting "directly or by an agent." For example, if a Virginia promoter sued Joel for breach of a contract entered into in Virginia, FMI's acts as Joel's agent in negotiating the contract in Virginia with the promoter might be a permissible basis for jurisdiction. Such an example is in stark contrast with the present case. Here we have the agent itself suing the principal, where the only contacts relied upon for jurisdiction are acts of the agent or of third parties.

The unseemliness of FMI's "bootstrapping," although it may not be a basis for denying jurisdiction, underscores the critical difficulty in this case. Assuming, without deciding, that the investment activities, record sales, ticket sales, and performance royalties are considered "Joel's contacts" for purposes of jurisdiction, the present cause of action does not arise from those contacts. Plaintiff's cause of action arises from an alleged breach of contract which occurred in New York, not Virginia.

None of the Virginia cases cited by the plaintiff have specifically discussed the "arising from" requirement because the nexus was obvious. In *Kolbe, supra*, 211 Va. 736, 180 S.E.2d 664 (1971), the plaintiff, a Virginia corporation, sued a California corporation for breach of a contract to sell merchandise. The defendant in that case had, through its agent, secured a purchase order for chairs from the Virginia plaintiff. In *I. T. Sales v. Dry*, 222 Va. 6, 278 S.E.2d 789 (1981), a California defendant was alleged to have breached an employment contract entered into in Virginia with a Virginia corporation; the court held that jurisdiction was proper. Finally, in *Nan Ya Plastics, supra*, 237 Va. 255, 377 S.E.2d 388, the nonresident defendant allegedly breached a contract formed in Virginia with a Virginia resident after negotiations initiated by the defendant who telephoned the plaintiff in Virginia. The common theme uniting these cases is a contract formed in Virginia where the party seeking jurisdiction is a Virginia resident or corporation.

This court can find no Virginia case that addresses the "arising from" requirement in a case similar to the present one. Numerous federal courts in Virginia have

addressed the issue with differing results. One recent federal district court case, somewhat similar factually to this case, has analyzed the "arising from" requirement and held jurisdiction to be proper. Plaintiff relies on *Eastern Scientific Marketing, Inc. v. Tekna-Seal, Inc.*, 696 F. Supp. 173 (E.D. Va. 1988). In *Tekna-Seal*, the plaintiff, a Pennsylvania corporation, and the defendant, a Minnesota corporation, had entered into an agreement whereby the plaintiff became the defendant's exclusive sales representative for several states, including Virginia. Defendant terminated the agreement, and plaintiff sued in Virginia for past and future commissions due thereunder. The court held that, under the long-arm statute, the claims of the plaintiff for commissions arose directly from the defendant's sales of $122,896.09 worth of goods to Virginia clients. *Id.* at 177.

The *Tekna-Seal* case is distinguishable from the present case on several points. First, the court noted that employees of the defendant, not merely the plaintiff acting on defendant's behalf, made contact with the Virginia client. Defendant's employees visited, telephoned, and sent letters, purchase orders, bills, and price quotations to Virginia. *Id.* at 175. Second, the contract in *Tekna-Seal* was directly related to sales. The plaintiff was a sales representative for several states, including Virginia. It received commissions for all sales made in Virginia.

Joel did not personally enter Virginia to transact any business from which the present cause of action arises. FMI's suit does not arise from Joel's concert appearances in Virginia because FMI has already been paid any commissions it is owed based on Joel's income from those performances. FMI's suit does not arise from the investment activities because it receives no compensation for those activities under the management agreement. Thus, the only contacts of Joel that even arguably relate to this cause of action are record sale royalties and performance royalties paid to Joel by separate entities who sell Joel's music all over the world and the ticket sales and advertising relating to Joel's March concert in Landover, Maryland, which occurred after this suit was filed.

Unlike the plaintiff in *Tekna-Seal*, FMI is not a sales representative. FMI, as Joel's manager, receives

compensation based on Joel's income from entertainment activities, but it does not produce that income by transacting business in Virginia. Thus, these contacts are only tenuously related to the plaintiff's cause of action. Further, these contacts are minimal in terms of Joel's involvement. If FMI is allowed to sue Joel here, it could, by the same logic, sue Joel in any jurisdiction where his records are sold, his music is performed, or tickets to his concerts are sold or advertised (assuming a long-arm statute similar to Virginia's). Such a result is clearly not contemplated by either the Virginia long-arm statute or the minimum contacts doctrine.

Finally, this court is mindful of a list of factors set out in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 62 L. Ed. 2d 490 (1980), compiled from previous cases and applied by both the United States Supreme Court and the Fourth Circuit as recently as 1987. *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 94 L. Ed. 2d 92 (1987); *Chung v. Nana Development Corp.*, 783 F.2d 1124 (4th Cir. 1986). The court in *World-Wide Volkswagen* stated that, in determining the reasonableness of haling a defendant into a particular state's court, the courts should consider the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. 444 U.S. 292, 62 L. Ed. 2d at 498.

These several factors illustrate the various policies underlying a state's assertion of personal jurisdiction over nonresidents and the limitations placed thereon. Those policies include due process, state sovereignty, federalism, and protection by a state of its own residents. The factors and policies underscore the impropriety of Virginia exercising personal jurisdiction over Joel. There is no Virginia resident to protect here; Virginia has no interest in resolving disputes between New Yorkers; New York state has a substantial interest in resolving the dispute, and, in fact, a case involving these litigants and similar issues is pending in New York. There is nothing before this court to persuade it that the New York courts are

unable to fairly and efficiently resolve the disputes described in the motion for judgment. The court is unable to discern any interest or policy to be served by subjecting this defendant to the jurisdiction of this court on these causes of action.

It is the opinion of this court that the plaintiff's cause of action does not arise from the defendant's transacting business in Virginia. Because the court holds that the terms of the long-arm statute do not apply here, no separate due process analysis is necessary. This court may not exercise jurisdiction over this defendant in this case. Accordingly, defendant's motion is granted, and plaintiff's case is dismissed.