**CIRCUIT COURT OF THE CITY OF WINCHESTER**

Susan D. Turnbull,
Administratrix of
the Estate of
James Turnbull,
deceased

v.

Roger L. Desrosier et al.

March 25, 2003

Case No. (Law) 01-173

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on February 20, 2003, on the Defendants' Motion to Dismiss for lack of personal jurisdiction over the non-resident defendants. Benjamin Dick, Esquire, appeared for the Plaintiff; and Gregory J. Harris, Esquire, appeared for Defendants Desrosier, Skowyra, and Northeast Warehousing. This case arises out of an employment contract entered into in Massachusetts for employment in Connecticut.

Thereupon, the Court heard evidence on the Motion to Dismiss for lack of jurisdiction of the Defendants Desrosier, Skowyra, and Northeast Warehousing. At the conclusion of the hearing, the Plaintiff asked for leave to take the deposition of Andre Libert and to file additional records from Turnbull's file, which deposition and records have now been filed, and the Defendants have also filed additional documentary evidence in the form of checks and phone records. Having considered the evidence, the Court has made the following decision to grant the Defendants' Motion to Dismiss.

*I. Findings of Fact*

The following facts are admitted or found by the greater weight of the evidence.

James Turnbull, who is now deceased, was a former employee of Northeast Warehousing and Distributing, Ltd. Prior to his death, Turnbull had lived in Winchester, Virginia, since 1994. Until October or November 1995, Turnbull worked for the Port of Georgetown South Carolina Port Authority and commuted to South Carolina to work.

Northeast Warehousing is a Massachusetts corporation whose only places of business were in Monson, Massachusetts, and in New London, Connecticut. Northeast is no longer in business, but in 1995 to 1996, its business consisted of receiving bulk merchandise shipments from a rail shipper, warehousing that merchandise pending shipping instructions, and, when shipping instructions were received, loading that merchandise onto a rail or motor carrier for delivery.

Roger Desrosier is the President of Northeast Warehousing, and Ario Skowyra is Northeast's Chief Financial Officer.

Connecticut Logistics, Inc, was a Connecticut corporation which Desrosier formed in 1995 to develop business in New London, Connecticut.

Desrosier first met Turnbull in March 1995 at a business conference in Connecticut. Since his employment in South Carolina was ending, later in 1995, Turnbull contacted Desrosier about working in New England.

Beginning in November 1995, Turnbull's daily log shows numerous and extensive telephone conversations with Roger Desrosier and in November 1995, Desrosier prepared a bid proposal for Connecticut Marine Terminal, Inc., in which James Turnbull was listed as "Vice-President & Director — Port Operations." Turnbull worked as a consultant on this project and was paid by Northeast for his time. Turnbull was listed as an employee in the proposal on the assumption that if they were successful in receiving the bid, that the corporation would be formed, and Turnbull would be hired, but this bid was not successful and that corporation was never formed.

On December 14, 1995, Turnbull traveled to Monson, Massachusetts, at Desrosier's invitation. Turnbull examined Northeast's facilities and operation, and Desrosier and Turnbull discussed Turnbull's potential employment with Northeast. A general agreement was reached whereby Turnbull agreed to supervise the New London facility, which was a two man operation. The New London project and Turnbull's employment would not start until shortly before the first rail shipments were due in Connecticut which was in June 1996.

By habit, Turnbull made daily notes of material employment related information in a college ruled, spiral notebook. There are pages of entries for every month in the period from October 24, 1995, through July 31, 1996, except for the month of December 1995, which stands alone as the only month for which there are no entries in the log. The entry for November 30, 1995, states "Roger Desrosier — 1st go around — Dec 14th — 2 hour meeting — set agenda — 9:30 a.m. — at the State Pier Cafeteria," and this is followed by a page of other notes which appear to deal with the Connecticut facility. With a page of premeeting notes, a note to "set agenda," and given the nature and extent of Turnbull's entries in his daily log, the Court is very perplexed are to why Turnbull, an habitual note taker, ostensibly made no notes of the December 14, 1995, meeting between him and Desrosier, because he had traveled to New England to view Northeast's operations and to discuss permanent employment with Desrosier.

On December 10, 1995, Northeast issued a check to Turnbull for $3,000.00 for his consultation work on the November 1995 Connecticut Marine Terminal proposal.

On April 18 and 25, 1996, Desrosier and Turnbull talked and discussed additional specifics of Turnbull's employment with Northeast and refined the details of Turnbull's employment. It appears that there are notes of a phone call. On April 18, 1996, Turnbull's log shows that he was calling "(203)488-0887," and Turnbull's phone records show short calls from Virginia to that number on April 18, 1996. Turnbull's phone records also show short calls to Monson, Massachusetts, on both April 18 and 25, 1996. Considering the length of Turnbull's notes of the contents of these discussions, these calls are not long enough to have generated the notes on the respective dates. Desrosier probably returned Turnbull's calls on each of those dates.

Turnbull's April 18, 1996, note reflects an employment start date of May 1, 1996, and Turnbull's title, but there is no mention of a salary, so obviously that had been discussed earlier. On April 25, 1996, Turnbull may have attempted to renegotiate his salary as there are various salary notations in his note of that date.

On May 6, 1996, Turnbull made an entry on his calendar "began working for NWD;" "NWD" is an abbreviation for Northeast Warehousing and Distributing, and, on or about that date, he began working for Northeast. On May 10, 1996, Northeast began paying Turnbull a salary.

Turnbull was employed with Northeast Warehousing, with the title of Vice-President of Operations of Connecticut Logistics, Inc., a division of Northeast Warehousing. The title is impressive, but the division was a two man operation, including Turnbull, who essentially worked as a warehouse

manager. He physically operated a forklift and did other physical warehouse related work as required. It was a forklift which injured him in March 1997. Connecticut Logistics was located in New London, Connecticut. It was Desrosier's understanding that Turnbull was to relocate to Connecticut, but instead Turnbull commuted to Connecticut to work during the week and returned to Virginia on the weekends just as he had done when he worked in South Carolina.

None of the defendants sent any mail in connection with the negotiation and formation of Turnbull's employment contract to Virginia, and the April 18 and 25, 1996, telephone conversations are the only times that the terms of employment were further discussed in any detail, and these appear to have been conversations refining and confirming the terms of employment, which were generally agreed to in the December meeting in Massachusetts.

As a benefit of his employment with Northeast Warehousing, Turnbull had a $15,000 group life insurance and accidental death policy with Gerber Life Insurance Company of New York, and Turnbull completed the enrollment forms for this policy in July 1996, at which time he was listed as Vice President of Connecticut Logistics.

Northeast has no business facilities in Virginia, has done no business in Virginia, and while Turnbull may have explored the potential for developing business in Virginia, he never made a contact for the purpose of directly soliciting current business in Virginia, because Northeast had no facilities in Virginia with which to provide any service in Virginia. On one occasion Desrosier and Turnbull and their wives had a social dinner at the Red Fox Inn in Middleburg, Virginia.

Turnbull kept a daily log of his business activities with Northeast/Connecticut Logistics. None of Turnbull's entries reflect business activity in Virginia.

On March 12, 1997, Turnbull was injured in an industrial accident at Connecticut Logistic's facility in New London, Connecticut, and thereafter Turnbull received workers' compensation benefits.

On August 27, 1997, Defendant Skowyra, who was Northeast's chief financial officer, canceled the life insurance portion of Northeast's employee health insurance plan, effective September 1, 1997.

On November 6, 1998, Turnbull died from causes unrelated to his 1997 industrial accident, and his widow and administratrix, then made a demand for his life insurance benefits of $15,000 under the Northeast group plan and was advised that plan had been canceled.

The group life insurance policy which Gerber issued to Northeast provided that coverage would end if "your Employer ceases to be a Participating Employer, or the Plan terminates." Gerber, Ex. 1, p. 6. In the event of cancellation, an employee was entitled to convert his life insurance if "he has been insured under the Policy for at least five years before it is canceled." Gerber, Ex. 2, p. 9.

Plaintiff has asserted actions of fiduciary breach, fiduciary intentional infliction of emotional distress, fiduciary fraud (Count One), intentional breach of contract (Count Two), and violation of insurance contract rights (Count Three) against the Defendants, to which they have filed a motion to dismiss for lack of personal jurisdiction.

## II. *Conclusions of Law*

The plaintiff has the burden of proving jurisdictional facts under the long-arm statute. *Haynes v. Carr*, 427 F.2d 700, 704 (4th Cir. 1970) (applying Virginia law). As the Supreme Court recently stated in *Glumina Bank d.d. v. D.C. Diamond Corp.*, 259 Va. 312, 317, 527 S.E.2d 775 (2000):

> "The function of our long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause of the Constitution of the United States." *Nan Ya Plastics Corp. U.S.A. v. DeSantis*, 237 Va. 255, 259, 377 S.E.2d 388, 391, *cert. denied*, 492 U.S. 921, 106 L. Ed. 2d 594, 109 S. Ct. 3248 (1989). *Accord Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319, 512 S.E.2d 560, 562 (1999). The Due Process Clause, however, protects a person's liberty interest in not being subject to the binding judgment of a forum unless the person has "certain minimum contacts" within the territory of the forum so that maintenance of the action does not offend "traditional notions of fair play and substantial justice." *DeSantis*, 237 Va. at 259, 377 S.E.2d at 391 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)). *Accord Peninsula Cruise*, 257 Va. at 319, 512 S.E.2d at 562.

"[A]n examination of the history of litigation involving the limits placed by the Due Process Clause on the power of state courts to enter binding judgments against persons not served within their boundaries shows a "clearly

discernible" trend "toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." *Nan Ya Plastics Corp. U.S.A. v. DeSantis*, 237 Va. 255, 259, 377 S.E.2d 381, 391, *cert denied* 492 U.S. 921 (1989) *quoting McGee v. International Life Ins. Co.*, 355 U.S. 220, 222 (1957).

In *Raymond, Colesar, Glaspy & Huss v. Allied Capital*, 761 F. Supp. 423, 425-26 (E.D. Va. 1991), the United States District Court for the Eastern District of Virginia concluded that the analysis of the application of the long-arm statute is complicated because the resolution turns on the specific factual situation in question. However, the Court noted that several general principles governing the determination of the proper application of the long-arm statute are well settled:

> First, the "manifest purpose" of Virginia Code § 8.01-328.1(A)(1) is "to assert jurisdiction over non-residents who engage in some purposeful activity in [Virginia] to the extent permissible under the due process clause." *Kolbe*, 211 Va. at 740. . . .
>
> Second, the acts conferring jurisdiction under the statute must coincide with the acts giving rise to the substantive claim. . . .
>
> Third, no *single* factor is dispositive. The determination whether the statute permits jurisdiction involves examination of both the quantity and quality of the contacts. This involves questions such as who benefitted from the contacts, who initiated them and why, whether the contacts involved any person's physical presence in the state, and what further conduct in the forum state was contemplated by the parties. . . .
>
> A defendant need not ever physically enter Virginia in connection with the disputed transaction.

The Virginia Long Arm Statute "speaks of transacting *any* business, it is a single-act statute requiring only one transaction in Virginia to confer jurisdiction on our courts." *Nan Ya Plastics Corp, supra* at 260, *quoting Kolbe, Inc. v. Chromodern, Inc.*, 211 Va. 736, 740, 180 S.E.2d 644 (1971). A phone call is not synonymous with a transaction. The statute contemplates a single business transaction or other purposeful business activity in Virginia.

The Virginia case most nearly on point is *Nan Ya Plastics Corp. U.S.A. v. DeSantis*, 237 Va. 255, 377 S.E.2d 388 (1989) *cert. denied*, 492 U.S. 921 (1989), in which the Supreme Court found jurisdiction because a large

multinational Delaware corporation "aggressively reached into Virginia and recruited a Virginia resident for employment elsewhere. . . . More important, however, *the employment contact was formed in Virginia.*" 237 Va. at 260, 377 S.E.2d at 391 (emphasis added). There were telephone conversations and mail from the corporation to the potential employee while he was located in Virginia. The Supreme Court upheld the trial court's ruling that the contract was formed in Virginia upon the employee's receipt in the mail of a written guarantee of a five year employment contract. *Id.* at 261.

The facts in the instant case are materially different from those in *Nan Ya Plastics Corp.* and do not show sufficient "minimum contacts" with Virginia to satisfy the requirements of the due process clause as required by *International Shoe* and its progeny. Northeast transacted no business in Virginia. It did not contract to do anything in the Commonwealth; it did not solicit business in Virginia; and it derived no revenue from any business in Virginia. The alleged breach of contract occurred in Massachusetts or Connecticut where the principal officers were located when the life insurance contract was terminated. The general employment agreement was reached in the meeting in Monson, Massachusetts, in December 1995; thereafter, there were two telephone conversations on April 18 and 25, 1996, in the two weeks before Turnbull began work in New England in which the terms of his employment were refined. Two incidental telephone calls about the terms of employment of a personal service contract in another state are not sufficient to confer in personam jurisdiction over Northeast and Desrosier, and certainly not over Skowyra. Moreover, the most convenient forum to try this action is in Massachusetts.

In *Glumina Bank v. D. C. Diamond Corp.*, 259 Va. 312, 318, 527 S.E.2d 775 (2000), the Virginia Supreme Court reaffirmed the principle that to properly assert personal jurisdiction over a nonresident, the nonresident defendant must have "engaged in purposeful activity in Virginia, and there are sufficient minimum contacts within Virginia so that maintenance of the action here does not offend traditional notions of fair play and substantial justice." In *Glumina*, the Supreme cited with approval *Promotion, Ltd. v. Brooklyn Bridge Centennial Commission*, 763 F.2d 173, 175 (4th Cir. 1985), in which the Fourth Circuit concluded;

> But even assuming that Promotion is correct in characterizing this relationship as contractual, jurisdiction nonetheless fails because Promotion is clearly correct in conceding that any contract between plaintiff and defendants was made and was to be carried out in New York. The Long Arm of § 8.01 does not

extend to a contract formed and performed outside of Virginia. *Danville Plywood Corp. v. Plain and Fancy Kitchens Inc.*; *Veirs v. Mounts* 466 F. Supp. 187 (W.D. Va. 1979). 763 F.2d at 175.

In *Veirs v. Mounts, supra,* the parties contracted for the construction of a building in Kentucky but had some preliminary negotiations on at least one occasion in Virginia. Applying Virginia law, the Court found that the contract was made in Kentucky and was to be performed in Kentucky and that the preliminary negotiations and discussions occurring in Virginia were of such a "quality and nature" that it would be unreasonable and unfair to require the non-resident defendant to conduct the litigation in Virginia.

In *Diamond Healthcare of Ohio v. Humility of Mary Health Planners,* 229 F.3d 448 (4th Cir. 2000), agents of the Virginia plaintiff approached an Ohio business about providing services, and there were extensive communications between the Ohio defendant and the Virginia plaintiff. The Ohio defendants signed the contract in Ohio and sent it to Virginia where it was executed by the Virginia plaintiff. The Fourth Circuit noted that the Virginia plaintiffs initiated the contractual relationship in Ohio and that the "bulk of the contract's performance" was to be in Ohio, *id.* at 451, so it affirmed the trial's granting the motion to dismiss based on lack of jurisdiction.

Plaintiff's allegations of a tortious breach of fiduciary duty are insufficient to confer jurisdiction over defendants in this Commonwealth. Ignoring for the purposes of the instant motion whether this is a valid cause of action, if such conduct indeed is tortious, it is clear that the tort of terminating the insurance policy occurred at the offices of Northeast located in New England. Virginia's Long Arm Statute permits the exercise of jurisdiction over non-resident defendants only when the tort is either committed within the Commonwealth or if committed outside the Commonwealth, it must not only cause tortious injury in the Commonwealth, but it must also be shown that defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Va. Code § 8.01-328.1(A)(3), (4). Thus, jurisdiction over any tortious conduct lies in Massachusetts.

In this case, the contract for personal employment was entered into in Massachusetts to be performed in Massachusetts and Connecticut. The negotiation of Turnbull's employment, the formation of his employment contract with Northeast Warehousing, and the performance of that

employment contract, all occurred outside Virginia. The fact that Mr. Turnbull may have occasionally done work incident to his employment in Virginia was not contemplated when the parties entered their contract of employment, and, under the facts of this case, Turnbull's occasionally doing employment related work in his home in Virginia and two phone calls to Virginia are not sufficient contacts to establish in personam jurisdiction over the Defendants Northeast Warehousing and its officers, Desrosier and Skowyra.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Motion to Dismiss for Lack of Personal Jurisdiction of the Defendants Northeast Warehousing and Distributing, Ltd., Roger L. Desrosier, and Ario K. Skowyra is granted, and this case is dismissed without prejudice as to those defendants.